UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIJON J.,

                         Plaintiff,

v.                                              1:20-CV-1193
                                                      (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KELLY LAGA-SCIANDRA, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | SERGEI ADEN, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 15.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

### A.     Factual Background

Plaintiff was born in 1992.  (T. 89.)  He completed high school.  (T. 293.)  Generally, Plaintiff's alleged disability consists of "mental retardation."  (T. 292.)  His amended disability onset date is March 3, 2010.  (T. 78.)

### B.     Procedural History

On December 23, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 96.)  Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On May 24, 2017, Plaintiff appeared before the ALJ, Bryce Baird.  (T. 45-88.)  On September 28, 2017, ALJ Baird issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 110-128.)  On November 15, 2017, the Appeals Council ("AC") granted Plaintiff's request for review and remanded the case back to the ALJ for further administrative proceedings.  (T. 129-132.)  On April 25, 2019, Plaintiff appeared before ALJ Baird.  (T. 31-44.)  On June 13, 2019, ALJ Baird issued a written decision finding Plaintiff not disabled under Social Security Act.  (T. 12-30.)  On July 9, 2020, the AC denied Plaintiff's request for review, rending the ALJ's 2019 decision the final decision of the Commissioner.  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 17-25.)  First, the ALJ found Plaintiff met the insured status requirements through March 31, 2014 and Plaintiff had engaged in substantial gainful

activity since March 2, 2010, but for a brief period of time. (T. 18.) Second, the ALJ found Plaintiff had the severe impairments of: obesity, right-ear hearing impairment, and intellectual disability. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 19.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except Plaintiff:

> can lift or carry up to 20 pounds occasionally, and lift or carry 10 pounds frequently. [Plaintiff] could sit up to six hours in an eight-hour workday and stand or walk up to 6 hours in an eight-hour workday. [Plaintiff] would be limited to occasionally climbing ramps or stairs and no climbing ladders, ropes, or scaffolds. [Plaintiff] could frequently stoop, occasionally kneel, occasionally crouch and never crawl. [Plaintiff] would be limited to jobs where no fine hearing capability with the right ear is required. He would be limited to environments with no exposure to hazards such as unprotected heights or moving machinery. [Plaintiff] is limited to simple, routine work that could be learned after a short demonstration or within 30 days. This work may include simple, routine and repetitive tasks. This work would not require more than simples work related decisions and would not require travel to unfamiliar places. [Plaintiff] would be off task up to 5% of the normal workday.

(T. 20-21.)[1] Fifth, the ALJ determined Plaintiff was capable of performing his past relevant work as a stock checker (DOT 299.667-014). (T. 23.) In the alternative, the ALJ determined there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 24.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

### A.     Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to question the vocational expert ("VE") regarding conflicts with the Dictionary of Occupational Titles ("DOT") and Selected Characteristics of Occupations ("SCO") as it pertained to Plaintiff's hearing loss and assessed limitations.  (Dkt. No. 11 at 14-21.)  Second, and lastly, Plaintiff argues the ALJ's step three evaluation of Listing 12.05 was not supported by substantial evidence.  (*Id*. at 22-30.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 14.)

### B.     Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ reasonably relied on the VE's testimony that hearing loss in one ear would not preclude Plaintiff's past relevant work or other jobs existing in the national economy.  (Dkt. No. 13 at 16-24.)  Second, and lastly, Defendant argues the ALJ reasonably found Plaintiff did not have adaptive functioning deficits so significant as to be totally disabling under the *per se* disabling Listing criteria.  (*Id*. at 24-31.)

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See *Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Hearing Impairment

Plaintiff argues the ALJ's RFC limitation to jobs with "no fine hearing capability with the right ear" was the product of legal error because the record did not contain a "clear medical opinion and assessment" of Plaintiff's hearing limitations and therefore the ALJ's limitations was "based on his own lay interpretation of complex medical evidence." (Dkt. No. 11 at 14-18.) Plaintiff further asserts the ALJ did not provide a "clear link" between the medical findings and his hearing limitation. (*Id*. at 18.) Plaintiff argues the ALJ's hearing limitation was not based in vocational terms and therefore

conflicted with the DOT.  (*Id*. at 14-15, 18-21.)  For the reasons outlined below, the ALJ properly assessed Plaintiff's right ear hearing loss and substantial evidence in the record supports the ALJ's RFC determination.

    i.)    **RFC**

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ.  *Id*. §§ 404.1527(d)(2), 416.927(d)(2).   The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c); 416.927(d), 416.945(a)(3), 416.946(c).  Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.  *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c); s*ee Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (ultimately, it is plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ).

To be sure, no medical source provided an opinion with specific work-related functional limitations due to Plaintiff's right ear hearing loss.  However, an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion.  The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

*Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Therefore, Plaintiff's assertion that the ALJ's RFC determination was the product of legal error because it was not supported by a specific medical opinion is without merit.

In formulating the RFC, the ALJ properly assessed Plaintiff's right ear hearing loss and substantial evidence supports his determination. At step two the ALJ determined Plaintiff had the severe impairment of right-ear hearing impairment. (T. 18.) In his step four analysis, the ALJ noted evidence in the record that Plaintiff injured his right ear as a child. (T. 22.) The ALJ considered objective testing which showed severe hearing loss in the right ear, but normal hearing in the left ear. (*Id*.) Testing further showed poor word discrimination in the right ear, but excellent word discrimination in the left ear. (*Id*.)

The ALJ relied on the opinion of consultative examiner, Hongbiao Liu, M.D. who opined Plaintiff was "mildly limited in any activity that required auditory accuracy." (T. 22, 510.) During his examination of Plaintiff, Dr. Liu observed Plaintiff did not use a hearing aid, he did not raise his voice when speaking, and he could keep normal conversation. (T. 508.) The ALJ also relied on the examination and observation of Iris Danzinger, M.D. who examined Plaintiff at the request of New York State Social Security Disability. (T. 22.) Dr. Danzinger observed Plaintiff had "clear quality to his voice." (T. 512.) She reported "severe mixed hearing loss in the right ear." (*Id*.)

Additional information in the record supported the ALJ's determination. Indeed, in his application for benefits, Plaintiff alleged "mental retardation" as his only medical condition. (T. 292.) He further stated he stopped worked, not due to a medical impairment, but due to "lack of work." (*Id*.) In his written application, Plaintiff did not indicate he had any limitations in hearing, and he did not use a hearing aid. (T. 305.) During his 2017 hearing, Plaintiff testified he had problems at work due to focus. (T. 62.) At that time Plaintiff also testified to working part-time as a security guard and he had problems with the amount of walking and had a confrontation with his boss; however, Plaintiff did not note any issues with hearing. (T. 73.) When asked if his right ear hearing loss "make[s] anything harder," Plaintiff responded it makes "everything" harder because he has to turn his head to hear people and he gets frustrated. (T. 77.)

Therefore, although the ALJ's determination that Plaintiff would be limited to jobs where "no fine hearing capability with the right ear" was required did not mirror a specific medical opinion, the limitation was supported by substantial evidence in the record. The ALJ relied on Dr. Liu's opinion Plaintiff was "mildly limited" in activities requiring auditory accuracy, Dr. Danzinger's examination and report, and Plaintiff's written and hearing testimony.

   **ii.) Conflict Between VE Testimony and DOT**

Plaintiff argues the ALJ's RFC limitation of "no fine hearing capability with the right ear" was not based in vocational terms and therefore VE testimony based on this limitation conflicts with the DOT and SCO because they do not address hearing limitations beyond assessing the level of noise intensity. (Dkt. No. 11 at 18-19.)

9

In general, "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4P (S.S.A. Dec. 4, 2000). An apparent unresolved conflict between the VE's testimony and the ALJ's RFC assessment may require remand. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) ("Testimony that a claimant with overhead reaching limitations is capable of performing a job that the Dictionary describes as requiring 'reaching,' then, creates at least an apparent conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony."); *see Gonzalez-Cruz v. Comm'r of Soc. Sec.*, 294 F. Supp. 3d 164, 192 (W.D.N.Y. 2018) (ALJ and VE failed to acknowledge conflict between testimony and DOT and no attempt was made to resolve the conflict).

Contrary to Plaintiff's assertion, the SCO and the DOT do address hearing limitations in addition to noise level intensity. (Dkt. No. 11 at 18-19.) Hearing is a non-exertional physical demand of occupations defined by the SCO as "perceiving the nature of sounds by ear." SCO, App'x C. The SCO and DOT also address noise level intensity as an environmental condition of occupations ranging from level 1 (very quiet) to level 4 (very loud). *Id.*, App'x D. As stated by Defendant, there is no evidence that Plaintiff had any restrictions in tolerating noise levels; therefore, Plaintiff's argument that the ALJ's RFC limitations to "no fine hearing capability with the right ear" conflicted with the DOT and SCO because the sources to no define hearing limitations beyond noise intensity, fails.

Further, there is no apparent conflict between Plaintiff's hearing impairment limitations as outlined in the RFC and his ability to perform his past relevant work or other work in the national economy.

SSR 85-15 provides the following guidance for evaluating hearing impairments:

> Communication is an important factor in work. The inability to hear, because it vitally affects communication, is thus of great importance. However, hearing impairments do not necessarily prevent communication, and differences in types of work may be compatible with various degrees of hearing loss. Occupations involving loud noise, such as in printing, have traditionally attracted persons with hearing impairments, whereas individuals with normal hearing have to wear ear protectors to be able to tolerate the working conditions. On the other hand, occupations such as bus driver require good hearing. There are so many possible medical variables of hearing loss that consultation of vocational reference materials or the assistance of a VS is often necessary to decide the effect on the broad world of work.

SSR 85-15 (S.S.A. 2015).

As outlined above, the ALJ considered the evidence in the record concerning Plaintiff's right-ear hearing loss.  Despite loss of hearing in his right ear, Plaintiff could fully hear out of his left ear.  The record contains notations that Plaintiff had no difficulty with communication and Plaintiff himself testified that his hearing loss caused, at most, frustration and required him to turn his head.

At Plaintiff's 2017 hearing, the ALJ presented various hypotheticals to the VE. (T. 80.)  The ALJ asked the VE if a person with Plaintiff's vocational factors and ultimate RFC determination could perform Plaintiff's past relevant work.  (T. 80-81.)  The VE testified such a person could perform Plaintiff's past work as a stock checker (DOT 299.667-014) and in addition could perform the occupations of cafeteria attendant (DOT 311.677-010), small products assembler (DOT 706.684-022), and usher (DOT 344.677-

014).  (T. 81.)[2]  The ALJ inquired if the testimony provided was consistent with the DOT and the VE answered, "yes."  (T. 83.)  Therefore, because the DOT is not silent as to the impact of hearing capability and the VE stated his testimony was consistent with the DOT, there is no apparent conflict and remand is not required.

Overall, Plaintiff suffered from hearing loss in his right ear which the ALJ determined limited Plaintiff to work which required no fine hearing capability with the right ear.  (T. 20.)  The ALJ relied on the medical opinion evidence in the record as well as objective observations and Plaintiff's testimony.  Consistent with the ALJ's RFC determination, Dr. Liu opined Plaintiff had "mild limitation for any activity with auditory accuracy," providers observed Plaintiff could keep a normal conversation, Plaintiff indicated his hearing impairment required him to turn his head and further Plaintiff did not allege loss of employment due to his hearing impairment.  Contrary to Plaintiff's assertion, the DOT and SCO account for the non-exertional hearing requirements of occupations and the VE provided occupations which a person with Plaintiff's vocational factors and RFC could perform.  There is no apparent conflict between the VE's testimony and the DOT and the VE testified that his testimony was consistent with the DOT.

### B. Listing 12.05

Plaintiff argues the ALJ erred in his step three determination that Plaintiff's cognitive impairment did not meet Listing 12.05 because the ALJ relied on medical

---

[2] Cafeteria attendant job requires occasional hearing and has a noise level of 3.  DOT 311.677-010.  Small products assembler job requires occasional hearing and has a noise level of 4.  DOT 706.684-022.  Usher job requires frequent hearing and noise level 3.  DOT 344.677-014.  Stock checker does not require hearing and has a noise level of 3.  DOT 299.667-014.

opinion evidence rendered prior to the changes in the Listing criteria. (Dkt. No. 11 at 22-30.) For the reasons outlined below, the ALJ's step three determination was proper and supported by substantial evidence.

To meet the listing criteria of 12.05(B), Plaintiff must demonstrate:

(1) Significantly subaverage general intellectual functioning evidenced by a full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence2; *and*
(2) Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (a) Understand, remember, or apply information (see 12.00E1); or (b) Interact with others (see 12.00E2); or (c) Concentrate, persist, or maintain pace (see 12.00E3); or (d) Adapt or manage oneself (see 12.00E4); *and*
(3) the evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404 Subpt. P, App. 1, 12.05(B)[3].

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

The parties do not dispute the ALJ's determination that Plaintiff's IQ score met the threshold Listing 12.05 criteria. (T. 19; Dkt. Nos. 11 at 22, 13 at 24.) The parties

---

3    The ALJ rendered his decision on June 13, 2019, and therefore the Court considers the version of Listing 12.05 that was in effect at that time. On January 17, 2017 the SSA revised Listing 12.05. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). The SSA has explained that it "expect[s] that Federal courts review [its] final decisions using the rules that were in effect at the time [it] issued the decisions." *Id.* at 66138 n.1; *see also, e.g., Rosa v. Comm'r of Soc. Sec.*, No. 17-CV-3344, 2018 WL 5621778, at *14 (S.D.N.Y. Aug. 13, 2018); *Gonzalez-Cruz*, 294 F. Supp. 3d at 185 n.10.

further do not dispute the ALJ's determination in the areas of interacting with others, and concentrating, persisting, or maintaining pace.  (T. 20; Dkt. No. 11 at 22, 13 at 24.)  Plaintiff argues substantial evidence does not support the ALJ's finding that Plaintiff had less than marked ability in the area of understanding, remembering or applying information and the area of adapt and manage oneself.  (Dkt. No. 11 at 24.)

Here, the ALJ's step three determination was proper and supported by substantial evidence in the record.  At step three the ALJ determined Plaintiff's mental impairment did not meet or medically equal the criteria of 12.05(B).  (T. 19.)  In relevant part, the ALJ concluded Plaintiff had a "moderate limitation" in his ability to understand, remember, or apply information and a "mild limitation" in his ability to adapt or manage himself.  (T. 19-20.)  In making his step three determination the ALJ relied on the examination and opinion of consultative examiner, Kristina Luna, Psy. D.  (*Id*.)  The ALJ also relied on Plaintiff's education records and testimony.  (*Id*.)

On April 15, 2015, Dr. Luna examined Plaintiff and provided a medical source statement.  (T. 502-505.)  Dr. Luna noted Plaintiff traveled to the appoint by bus.  (T. 502.)  He reported he was currently employed on an as-needed basis.  (*Id*.)  He reported cognitive symptomatology and deficits his whole life including short-term and long-term memory deficits, receptive language deficits, difficulty learning new material, and abstracting difficulties.  (*Id*.)  On examination, Dr. Luna observed Plaintiff was cooperative, though immature.  (T. 503.)  Plaintiff had impaired attention and concentration due to limited intellectual functioning.  (*Id*.)  Plaintiff had impaired memory due to limited intellectual functioning.  (*Id*.)  Dr. Luna noted no formal intellectual testing was done.  (T. 504.)  Dr. Luna noted Plaintiff was able to cook, clean, shower, dress, do

laundry, and shop.  (*Id*.)  Plaintiff had "good adaptive functioning skills in all areas with the exception of academics."  (*Id*.)

In a medical source statement, Dr. Luna opined Plaintiff had no limitation in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schooled, learn new tasks, relate adequately with others, and appropriately deal with stress.  (T. 504.)  She opined Plaintiff was mildly limited in his ability to make appropriate decisions, moderately limited in his ability to maintain attention and concentration and perform complex tasks independently.  (*Id*.)  She noted Plaintiff's difficulties were caused by cognitive deficits.  (*Id*.)

Specifically, with respect to understanding, remembering, or applying information, the ALJ concluded Plaintiff had moderate limitations based on Dr. Luna's opinion that Plaintiff was able to understand and remember simple directions.  (T. 19); 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(E)(1) (This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities.)  The ALJ noted Plaintiff's low IQ score and special education setting; however, the ALJ also considered Plaintiff's ability to work at various jobs, conduct activities of daily living, perform household chores, and manage his own personal care.  (*Id*.)  The ALJ also relied on consultative examiner, Susan Santarpia, Ph.D.'s opinion that Plaintiff could perform mathematical calculations using his fingers and made one error on serial 7s.  (*Id*.)  Therefore, the ALJ correctly determined that Plaintiff was moderately limited in the understanding, remembering, and applying information domain.  *See Sprague v. Comm'r of Soc. Sec.*, No. 1:18-CV-666, 2019 WL 4059004, at *6 (W.D.N.Y. Aug. 27, 2019) (plaintiff was mildly, as opposed to markedly limited in the understanding,

remembering and applying information domain when he had essentially normal mental status examinations, attended doctor's appointments, cooked, prepared meals, read, and wrote poetry); *Gross v. Comm'r of Soc. Sec.,* No. 1:16-CV-0723, 2017 WL 2574015, at *6 (N.D.N.Y. June 14, 2017) (plaintiff's being able to cook, clean, grocery shop with his mother, take public transportation independently, graduate high school with IEP diploma, live alone, and socialize with friends demonstrated that he did not have the deficits in adaptive functioning to demonstrate that he was medically disabled as a result of his intellectual disability).

With respect to adapting or managing himself, the ALJ concluded Plaintiff had mild limitations. (T. 20.) This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(E)(4). The ALJ relied on Dr. Luna's opinion that Plaintiff was able to appropriately deal with stress. (T. 20.) The ALJ further relied on Plaintiff's ability to work as a security guard as well as other jobs. (*Id*.) The ALJ noted Plaintiff did not receive mental health treatment, he reported normal activities of daily living, he could take public transportation, he could ask for help, and spent time with his young son. (*Id*.) Therefore, the ALJ reasonably concluded Plaintiff had mild limitations in this area. *See Sprague,* 2019 WL 4059004, at *7 (ALJ properly found plaintiff had moderate, but not marked, limitation in adapting or managing himself where plaintiff had appropriate grooming, adequate insight and judgment, engaged in normal daily activities).

Plaintiff argues Dr. Luna's opinion cannot constitute substantial evidence because her 2015 examination and opinion were provided prior to the changes in

Listing 12.05B.  (Dkt. No. 11.)  Plaintiff's argument is without merit.  The fact that Dr. Luna conducted her examination and provided an opinion prior to the change in the Listing requirements did not alter the substance of Dr. Luna's examination and opinion. The ALJ properly relied on Dr. Luna's examination and opinion in his overall assessment of Plaintiff's cognitive impairment at step three.

The Court cannot set aside the Commissioner's disability determination unless it finds that the decision is based on either legal error or factual findings that are unsupported by substantial evidence.  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  Based on the reasons outlined here, the ALJ's determination was proper and supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:       February 14, 2022

_____
William B. Mitchell Carter
U.S. Magistrate Judge